**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| AMERICAN DIAMOND, INC. d/b/a | ) |
| WASHINGTON DIAMOND | ) |
| | ) |
|         Plaintiff, | ) Civil Action No.:  8:14-cv-02277-PWG |
| | ) |
| v. | ) |
| | ) |
| WASHINGTON DIAMONDS CORPORATION | ) |
| | ) |
|         Defendant. | ) |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant Washington Diamonds Corporation responds to the Complaint filed by

Plaintiff American Diamond, Inc. with the following Answer, Affirmative Defenses, and

Counterclaims:

## ANSWER

As to the specific allegations of the Complaint:

## NATURE OF THE ACTION

1.     Admitted.

2.     Defendant admits that Plaintiff has obtained a federal trademark registration for

the mark WASHINGTON DIAMOND for jewelry and diamond jewelry and the services

identified in the certificate of registration, and that Plaintiff seeks equitable and monetary relief

in the Complaint.  Defendant denies that Plaintiff's registration is valid, or that Plaintiff owns

any valid trademark rights, or that Defendant's activities constitute infringement, or that Plaintiff

is entitled to any of the relief requested in the Complaint.

3.     Denied.

4.     Denied.

5.      Denied.

6.      Denied.

## PARTIES

7.      Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 7 of the Complaint, and on that basis, denies those allegations.

8.      Defendant denies that it is a corporation organized under the laws of Maryland. Defendant admits the remaining allegations of Paragraph 8 of the Complaint.

## JURISDICTION AND VENUE

9.      Admitted.

10.      Defendant admits that this court has personal jurisdiction over it, but denies the remaining allegations in Paragraph 10 of the Complaint.

11.      Admitted.

## BACKGROUND FACTS COMMON TO ALL CLAIMS FOR RELIEF

### ADI'S Products and Services

12.      Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 12 of the Complaint, and on that basis, denies those allegations.

13.      Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 13 of the Complaint, and on that basis, denies those allegations.

14.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 14 of the Complaint, and on that basis, denies those allegations.

15.     Defendant admits that Plaintiff has recently obtained a federal trademark registration for WASHINGTON DIAMOND for "Jewelry and diamond jewelry; On-line wholesale store services featuring jewelry and diamond jewelry; Retail jewelry stores; Wholesale store services featuring jewelry and diamond jewelry; Custom design and engineering of jewelry and diamond jewelry; Custom design of jewelry and diamond jewelry based on personal selections made by the customer," the application for which registration was filed after Plaintiff became aware of Defendant.  The registration speaks for itself.  Defendant denies that the registration is valid and enforceable, or that Plaintiff owns any valid trademark rights.

16.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 16 of the Complaint, and on that basis, denies those allegations.

17.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 17 of the Complaint, and on that basis, denies those allegations.

18.     Defendant denies that Plaintiff owns any valid trademark rights.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 18 of the Complaint, and on that basis, denies those allegations.

**WDC and Its Wrongful Acts**

19.     Defendant admits that it creates lab-grown diamonds and promotes the sale of its lab-grown diamonds using its business name WASHINGTON DIAMONDS.  Defendant denies

that lab-grown diamonds are an "imitation" of diamonds.  The use of the term "synthetic" for lab-grown diamonds is misleading in as much as lab-grown diamonds are genuine diamonds.

20.     Defendant admits that it first used the business name WASHINGTON DIAMONDS in 2008.  Defendant denies the allegations in Paragraph 20 of the Complaint to the extent they suggest that Defendant requires Plaintiff's authorization to use the business name WASHINGTON DIAMONDS.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 20 of the Complaint, and on that basis, denies those allegations.

21.     Defendant denies that its lab-grown diamonds are "imitation."  The term "synthetic" is misleading.  Defendant denies that it makes any retail sales of lab-grown diamonds.

22.     Defendant denies that its lab-grown diamonds are "imitation."  The term "synthetic" is misleading.  Defendant admits the remaining allegations in Paragraph 22 of the Complaint.

23.     Defendant denies that its lab-grown diamonds are "imitation" or otherwise *not* diamonds or of high quality.  The term "synthetic" is misleading.  Defendant denies that its activities have caused or will cause damage to Plaintiff.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 23 of the Complaint, and on that basis, denies those allegations.

**Similarity of the WASHINGTON DIAMOND Mark and the WASHINGTON DIAMONDS Mark**

24.     Denied.

25.     Denied.

26.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 26 of the Complaint, and on that basis, denies those allegations.

27.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 27 of the Complaint, and on that basis, denies those allegations.

28.     Defendant admits that it has made changes to the style and presentation of the WASHINGTON DIAMONDS business name, but denies that any such changes were in response to Plaintiff's correspondence. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 28 of the Complaint, and on that basis, denies those allegations.

29.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 29 of the Complaint, and on that basis, denies those allegations.

**Similarity of the Goods Sold**

30.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 30 of the Complaint, and on that basis, denies those allegations.

31.     Defendant denies that its diamonds are "imitation" or otherwise are *not* diamonds and of high quality.  The term "synthetic" is misleading.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 31 of the Complaint, and on that basis, denies those allegations.

## Similarity of the Channels of Trade

32.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 32 of the Complaint, and on that basis, denies those allegations.

33.     Defendant admits that it manufactures and sells lab-grown diamonds to wholesale buyers and that it sells lab-grown diamonds through distributors for use in industrial and scientific applications.  Defendant denies that it makes or sells jewelry.  Defendant denies the remaining allegations in Paragraph 33 of the Complaint.

34.     Denied.

35.     Denied.

36.     Defendant denies that its use of its WASHINGTON DIAMONDS business name is damaging to Plaintiff.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 36 of the Complaint, and on that basis, denies those allegations.

37.     Defendant admits that it intends to continue to use WASHINGTON DIAMONDS as its business name and in the URL www.washingtondiamondscorp.com.  Defendant denies the remaining allegations in Paragraph 37 of the Complaint.

38.     Denied.

## Actual Confusion and ADI's Efforts to Prevent WDC's Infringing Use
## of the WASHINGTON DIAMOND Mark

39.     Defendant denies that its use of its WASHINGTON DIAMONDS business name creates a likelihood of confusion.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 39 of the Complaint, and on that basis, denies those allegations.

40.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 40 of the Complaint, and on that basis, denies those allegations.

41.     Defendant denies that its use of its WASHINGTON DIAMONDS business name creates a likelihood of confusion.  Defendant admits the remaining allegations of Paragraph 41 of the Complaint.

42.     Defendant admits that Plaintiff interfered with Defendant's social media presence on the Internet.  Defendant denies that there was any significant time and expense involved in Plaintiff's interference with Defendant's social media presence on the Internet.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 42 of the Complaint, and on that basis, denies those allegations.

43.     Defendant admits that Plaintiff or counsel for Plaintiff took the action specified in Paragraph 43 of the Complaint but denies that Facebook's response is indicative of any valid claim made by Plaintiff.

44.     Defendant admits that Plaintiff or counsel for Plaintiff took the action specified in Paragraph 44 of the Complaint but denies that Twitter's response is indicative of valid claim made by Plaintiff.

45.     Defendant admits that Plaintiff or counsel for Plaintiff took the action specified in Paragraph 45 of the Complaint but denies that YouTube's response is indicative of any valid claim made by Plaintiff.

46.     Defendant admits that is has continued to use WASHINGTON DIAMONDS as its business name but denies that such use is damaging Plaintiff.

## FIRST CLAIM FOR RELIEF

47.     The recitation in Paragraph 47 of the Complaint requires no answer.  Defendant's responses to paragraphs 1-46 are incorporated herein.

48.     Denied.

49.     Defendant admits that is has used and continues to use WASHINGTON DIAMONDS as its business name in connection with its business related to lab-grown diamonds but denies that such use requires authorization from Plaintiff.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

## SECOND CLAIM FOR RELIEF

54.     The recitation in Paragraph 54 of the Complaint requires no answer.  Defendant's responses to paragraphs 1-53 are incorporated herein.

55.     Defendant admits that is has used and continues to use WASHINGTON DIAMONDS as a business name in connection with its business related to lab-grown diamonds but denies that such use requires authorization from Plaintiff.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

62.     Denied.

## THIRD CLAIM FOR RELIEF

63.     The recitation in Paragraph 63 of the Complaint requires no answer. Defendant's responses to paragraphs 1-62 are incorporated herein.

64.     Denied.

65.     Defendant admits that is has used and continues to use WASHINGTON DIAMONDS as its business name in connection with its business related to lab-grown diamonds but denies that such use requires authorization from Plaintiff.

66.     Denied.

67.     Denied.

68.     Denied.

69.     Denied.

70.     Denied.

## FOURTH CLAIM FOR RELIEF

71.     The recitation in Paragraph 71 of the Complaint requires no answer. Defendant's responses to paragraphs 1-70 are incorporated herein.

72.     Denied.

73.     Defendant admits that is has used and continues to use WASHINGTON DIAMONDS as its business name in connection with its business related to lab-grown diamonds but denies that such use requires authorization from Plaintiff.

74.     Denied.

75.     Denied.

76.     Denied.

77.     Denied.

78.     Denied.

## AFFIRMATIVE DEFENSES

1.      The Complaint fails to state claims upon which relief can be granted.  Plaintiff owns no U.S. trademark registration for "diamonds."

2.      Plaintiff does not own a valid and protectable trademark.

3.      Defendant's use of WASHINGTON DIAMONDS as its business name in connection with its business related to lab-grown diamonds is not likely to cause confusion as to source or sponsorship with Plaintiff's jewelry or its business given the parties' disparate goods and services, channels of trade, classes of purchasers, the care exercised by purchasers in the context of  purchase decisions, and the nature of the common terms.

4.      Plaintiff is barred from the relief it seeks by virtue of unclean hands based on its interference with Defendant's social media presence on the Internet, which interference was pursued despite Plaintiff's invalid trademarks rights and no likelihood of confusion.

5.      Plaintiff is barred from the injunctive relief it seeks by virtue of estoppel and/or laches based on its failure to take any action against Defendant in 2008, when Defendant first used the business name WASHINGTON DIAMONDS.  Plaintiff waited until 2012 to express its concerns to Defendant, in response to which Defendant declined to cease use of the business name WASHINGTON DIAMONDS.  Plaintiff then waited until 2014 to resurrect its claims and interfere with Defendant's social media presence on the Internet, and only then filed its Complaint against Defendant.

6.      Defendant denies all allegations not specifically responded to and denies that Plaintiff is entitled to the relief sought.

## COUNTERCLAIMS

These counterclaims are asserted by Defendant and Counter-Claimant Washington Diamonds Corporation ("WDC") against Plaintiff and Counter-Respondent American Diamond, Inc. ("ADI") pursuant to the Lanham Act, 15 U.S.C. §1051 *et seq.* and under the common law of the State of Maryland and the Commonwealth of Virginia.

## PARTIES

1.      WDC is a corporation organized under the laws of the State of Delaware with a principal place of business at the location stated in ADI's Complaint.

2.      ADI is a corporation organized under the laws of the Commonwealth of Virginia with its only place of business at 1245 W. Broad Street, Falls Church, Virginia 22046.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this matter and over ADI because ADI initiated this action and placed its federal trademark registration in issue and thus subjected itself to the jurisdiction of the Court on WDC's counterclaims.

4.      Venue is proper in this Judicial District because ADI initiated this action and placed its federal trademark registration in issue and thus subjected itself to venue in this Judicial District on WDC's counterclaims.

## ALLEGATIONS COMMON TO ALL COUNTERCLAIMS FOR RELIEF

### WDC and Its Business

5.      WDC is a technology-based company whose business is developing lab-grown diamonds through a chemical process known as chemical vapor deposition ("CVD").  WDC's

diamonds are not "imitation" because they are genuine diamonds.  The use of the term "synthetic" in connection with lab-grown diamonds is accordingly misleading and a mischaracterization of the products and services offered by WDC.

6.      WDC has licensed rights from the Carnegie Institute of Washington under certain U.S. patent registrations to use proprietary technology to grow single-crystal CVD diamonds.

7.      WDC adopted the business name WASHINGTON DIAMONDS in 2008, which name accurately reflects the nature of its business (lab-grown diamonds) and its connection with the Carnegie Institute of Washington.

8.      WDC's lab-grown diamonds are considered scientific materials that are primarily used in high-tech applications; they are also sold to manufacturers of jewelry.

9.       WDC does not sell its lab-grown diamonds directly to purchasers of jewelry and does not sell any product through any retail channels; rather, it sells through distributors and primarily through distributors of lab-grown diamonds.

10.     Since WDC sells lab-grown diamonds with high-tech and industrial applications, and to manufacturers of jewelry, the products are sold to knowledgeable commercial accounts exercising a high degree of care.

11.     WDC markets primarily through consultancy and its website to the trade only, including academics engaged in ultra-high pressure research.  Its advertisements are not directed to the general jewelry purchasing public.  It has also, but only once, promoted its lab-grown diamonds in the trade publication Jewelers' Circular Keystone, which is not a publication directed to ordinary retail purchasers of jewelry.

12.     WDC operates the website www.washingtondiamondscorp.com to promote itself and its business, and the greatest number of hits for the website come from India, where most of the world's diamond polishing is done, reflecting the trade-only business of WDC.

13.     WDC had maintained an active social media presence online, with accounts on Facebook, Twitter, and YouTube, through which it also advertised and promoted itself and its business.

### ADI and Its Business and Purported Trademark Rights

14.     ADI operates a jewelry store in Falls Church, Virginia, under the name WASHINGTON DIAMOND.

15.     ADI sells diamond jewelry and alleges that it sells loose diamonds in its jewelry store.  It alleges it sells diamonds wholesale to distributors, diamond importers, and dealers.

16.     ADI advertises that it serves customers by appointment only; that is, it is directing its efforts to an affluent and knowledgeable base of purchasers who are going to be making expensive purchase decisions in an environment that fosters consideration, not impulse purchase.

17.     Not until January 16, 2013, with knowledge of WDC, did ADI file an application to register WASHINGTON DIAMOND as a trademark, based on a claim of use in commerce on or in connection with the following goods and services since at least as early as September 1982:

> Jewelry and diamond jewelry; On-line wholesale store services featuring jewelry and diamond jewelry; Retail jewelry stores; Wholesale store services featuring jewelry and diamond jewelry; Custom design and engineering of jewelry and diamond jewelry; Custom design of jewelry and diamond jewelry based on personal selections made by the customer.

18.     In its trademark application as-filed, ADI submitted a claim of acquired distinctiveness under 15 U.S.C. §1052(f) based on ADI's purportedly substantially exclusive and continuous use of WASHINGTON DIAMOND for at least five years preceding the filing date of

the application in connection with such goods and services as are identified in the application, a concession that WASHINGTON DIAMOND is not an inherently distinctive trademark.

19.     During the prosecution of its trademark application, ADI disclaimed any exclusive rights to use the term DIAMOND apart from the mark as a whole, given the term is generic for a component of some of the product sold by ADI under the purported mark.

20.     ADI secured U.S. Registration No. 4,399,260 for the mark WASHINGTON DIAMOND, for the goods and services identified in the application only, on September 10, 2013.  The registration is not incontestable.

21.     ADI made no application for registration of its purported mark for use on "diamonds", and has no registration for "diamonds."

## The Dispute Between ADI and WDC

22.     On or about September 27, 2012, ADI contacted WDC regarding WDC's use of its WASHINGTON DIAMONDS business name.  Prior to that communication, WDC had no knowledge of ADI, or its use of WASHINGTON DIAMOND for its jewelry store.

23.     WDC declined to cease use of WASHINGTON DIAMONDS as its business name because it did not and does not believe there is any likelihood of confusion of an appreciable number of purchasers exercising reasonable care as to source or sponsorship of the different goods and services, given the geographically descriptive nature of ADI's purported mark WASHINGTON DIAMOND, the differences between the parties' respective goods and services, and the disparate channels of trade and classes of consumers, and the conditions in which purchase decisions are made.

24.     In mid-2013, Mr. Clive Hill of WDC met with Mr. Tom Daube of ADI.  At that meeting, Mr. Daube promised Mr. Hill to contact him should Mr. Daube become aware of evidence that WDC's name was costing ADI busines in order to address the issue.

25.     Thereafter, ADI made no formal objections to WDC's continued use of its WASHINGTON DIAMOND business name, or to WDC's social media accounts on Facebook, Twitter, or YouTube, or to WDC's website www.washingtondiamondscorp.com.

26.     In January 2014, counsel for ADI submitted a complaint to Facebook based upon WDC's alleged infringement of ADI's asserted trademark rights, and based solely on ADI's assertions, WDC's page was unilaterally removed from Facebook.

27.     In February 2014, counsel for ADI submitted a complaint to Twitter based upon WDC's alleged infringement of ADI's asserted trademark rights, and based solely on ADI's assertions, WDC's account was unilaterally removed from Twitter.

28.     In March 2014, counsel for ADI submitted a complaint to YouTube based upon WDC's alleged infringement of ADI's asserted trademark rights, and based solely on ADI's assertions, WDC's account was unilaterally removed from YouTube.

29.     In response to the actions taken against WDC's social media accounts, WDC sent emails to counsel for ADI on February 7 and March 1, 2014 to discuss and attempt to resolve the dispute.

30.     On April 7, 2014, counsel for ADI emailed WDC with a formal demand to cease and desist all use of WASHINGTON DIAMONDS on the grounds it constituted an infringement of ADI's purported rights in the mark WASHINGTON DIAMOND.

31.     On May 13, 2014, counsel for WDC responded to ADI's demands and maintained its position that there is no likelihood of confusion between the parties' respective names and

marks, and therefore, WDC declined to cease use of its WASHINGTON DIAMONDS business name in connection with its lab-grown diamonds.

32.     In WDC's letter of May 13, 2014, among other relevant arguments, it was noted that although ADI's mark and WDC's name share the common name "Washington," there are other users of "Washington" in connection with jewelry and related products and services, including: WASHINGTON JEWELS YOUR FRIENDLY COUNTERFEITER (Arizona State Trademark Registration No. 35432), registered on April 19, 1995, for use in connection with the sale of diamonds and colored stones; MT. WASHINGTON JEWELERS (Ohio State Trademark Registration No. RN109433), registered on March 15, 1993, for use in connection with jewelry services; WASHINGTON JEWELERS, the self-proclaimed #1 diamond jewelers on the Inner Banks of North Carolina, which promotes itself online at www.washingtonjewelersnc.com; JEWELRY APPRAISAL SERVICES OF WASHINGTON, LLC, an independent jewelry appraiser that promotes herself online at www.jasowa.com; WASHINGTON GEMS & JEWELRY, a store in Seattle, Washington, specializing in estate jewelry, diamonds, rings, and the like and which promotes itself on Yelp.com.

33.     Additional written communications between counsel for ADI and WDC were sent on May 15 and May 28, 2014, but ADI refused to withdraw its demands and WDC declined to cease use of its WASHINGTON DIAMONDS business name in connection with its lab-grown diamonds.

34.     On July 17, 2014, ADI filed its Complaint against WDC for trademark infringement, trademark counterfeiting, false designation of origin, and unfair competition. In its Answer set forth above, WDC denies all the salient allegations in the Complaint.

## COUNTERCLAIM COUNT I
### Cancellation of Trademark Registration
### 15 U.S.C. § 1052(e)

35.     WDC repeats the allegations set forth above as if fully set forth herein.

36.     WDC brings this counterclaim seeking cancellation of ADI's U.S. Registration No. 4,399,260 pursuant to 15 U.S.C. § 1119, on the grounds the alleged WASHINGTON DIAMOND mark in connection with ADI's goods and services is ineligible for registration under 15 U.S.C. § 1052(e).

37.     ADI's alleged mark WASHINGTON DIAMOND as used in connection with the goods and services identified in U.S. Registration No. 4,399,260 is merely descriptive and not inherently distinctive because it simply identifies the primary component of the product and services sold and rendered by ADI and the geographic origin of those products and services.

38.     The primary significance of ADI's purported mark WASHINGTON DIAMOND is a generally known geographic location, namely, Washington, D.C., and the generic term for a primary component of the jewelry ADI sells through its single store in the Washington D.C. area.

39.     ADI's goods and services are sold and rendered from a storefront located in Falls Church, Virginia, a suburb of Washington, D.C.

40.     Purchasers are likely to understand that ADI's goods and services are sold and rendered from a storefront located in the Washington, D.C. area.

41.     By making application to register WASHINGTON DIAMOND as a mark for the goods and services identified in the application under 15 U.S.C. § 1052(f), ADI has conceded that its use of WASHINGTON DIAMOND in connection with such goods and services is merely descriptive and not inherently distinctive.

42.     ADI's alleged WASHINGTON DIAMOND mark, as used in connection with the goods and services identified in the registration it secured, has not acquired distinctiveness and cannot acquire distinctiveness (also known as secondary meaning) because ADI has not and cannot show that the primary significance of WASHINGTON DIAMOND to the public is to identify the source of ADI's goods and services identified in the registration, and distinguish them from the like goods of others in the Washington, D.C. area.

43.     ADI cannot rely upon its claim of acquired distinctiveness under 15 U.S.C. § 1052(f) based on use of WASHINGTON DIAMOND for at least five years preceding the filing date of the application because such use was not substantially exclusive during that period.

44.     The Trademark Act, 15 U.S.C. § 1052(e), prohibits registration on the Principal Register of a mark that is primarily geographically descriptive of the goods or services named in the application and has not acquired distinctiveness.

45.     The Trademark Act, 15 U.S.C. § 1119, allows this Court to determine the right to registration and to order the cancellation of registered mark.

Wherefore, ADI's federal trademark registration should be cancelled by the Court pursuant to 15 U.S.C. § 1119 because the registration is directed to a mark that is merely descriptive of the goods or services named in the application and has not acquired distinctiveness as required by 15 U.S.C. § 1052(e).

## COUNTERCLAIM COUNT II
### Cancellation of Trademark Registration
### 15 U.S.C. § 1120

46.     WDC repeats the allegations set forth above as if fully set forth herein.

47.     WDC brings this counterclaim seeking cancellation of ADI's U.S. Registration No. 4,399,260 pursuant to 15 U.S.C. § 1119, on the grounds that the application that matured

into Registration No. 4,399, 260 contained a false and fraudulent written representation in violation of 15 U.S.C. § 1120.

48.     ADI filed its Application Serial No. 85/824716 for registration of the mark WASHINGTON DIAMOND on January 16, 2013.  The application matured into Registration No. 4,399,260 on September 10, 2013.

49.     ADI's application contained a claim of acquired distinctiveness under 15 U.S.C. § 1052(f), which stated:

> The mark has become distinctive of the goods/services through the applicant's *substantially exclusive* and continuous use in commerce that the U.S. Congress may lawfully regulate for at least the five years immediately before the date of this statement.  (emphasis added)

50.     ADI's application, and the inclusive claim of acquired distinctiveness, was signed by Tom Daube, identified in the application as Vice-President of American Diamond, Inc.

51.     At the time ADI filed its application containing the claim of acquired distinctiveness, ADI's use of the mark WASHINGTON DIAMOND was not substantially exclusive, given that ADI knew or should have known about myriad third party use of "Washington" for diamonds and related jewelry goods and services, including but not limited to use of the name WASHINGTON DIAMONDS by WDC.

52.     Given the foregoing, the claim of acquired distinctiveness contained in ADI's application, and quoted in Paragraph 49 above, constitutes a false and fraudulent representation.

53.     The Trademark Act, 15 U.S.C. §1120, provides that any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

54.     The Trademark Act, 15 U.S.C. § 1119, allows this Court to determine the right to registration and to order the cancellation of registered mark.

Wherefore, ADI's federal trademark registration should be cancelled by the Court pursuant to 15 U.S.C. § 1119, and damages awarded to WDC, because the registration was procured by ADI through a false and fraudulent written declaration in violation of 15 U.S.C. § 1120.

## COUNTERCLAIM COUNT III
### Tortious Interference with Business Relations
### Under Common Law

55.     WDC repeats the allegations set forth above as if fully set forth herein.

56.     From about 2012 until early 2014, WDC maintained an active online social media presence on several social media networks, namely, Facebook, Twitter, and YouTube, through which WDC used the WASHINGTON DIAMONDS name to advertise and promote itself and its business.

57.     WDC enjoyed a business and contractual relationship with Facebook, Twitter, and YouTube by virtue of the sites' policies, which prompt new users to agree to the sites' terms of use before creating an account and corresponding social media page.

58.     ADI was aware of WDC's business and contractual relationship with Facebook, Twitter, and YouTube because it is general knowledge that in order to obtain an account with a social media site, a user such as WDC must agree to the site's terms of use.

59.     WDC's social media accounts on Facebook, Twitter, and YouTube constituted a valuable trade asset of WDC's business.

60.     From January through March 2014, counsel for ADI submitted complaints to Facebook, Twitter, and YouTube, based upon WDC's alleged infringement of ADI's asserted

trademark rights, which resulted in WDC's accounts being removed from Facebook, Twitter, and YouTube.

61.     For the reasons set forth in WDC's Answer, Affirmative Defenses, and Counterclaim, ADI does not possess any valid or enforceable trademark rights, but ADI nevertheless misled Facebook, Twitter, and YouTube as to ADI's purported trademark rights.

62.     ADI willfully and deliberately interfered with WDC's business and contractual relationships with Facebook, Twitter, and YouTube, with the intent to shut down WDC's social media accounts and cause damage to WDC and its lawful business.

63.     ADI's actions have caused actual damage to WDC in the nature of lost marketing opportunities.

64.     ADI's actions constitute tortious interference with WDC's business and contractual relationships in violation of the common law of the State of Maryland and/or the common law of the Commonwealth of Virginia.

Wherefore, WDC is entitled to injunctive relief precluding ADI's further interference with WDC's social media accounts with Facebook, Twitter, and YouTube, and for damages relating to ADI's unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, by Defendant and Counter-Claimant Washington Diamonds Corporation ("WDC") prays for judgment against Plaintiff and Counter-Respondent American Diamond, Inc. ("ADI") as follows:

1.     That the Court enter a certified order to the Director of the U.S. Patent & Trademark Office ("PTO") to make appropriate entry upon the records of the PTO cancelling ADI's U.S. Registration No. 4,399,260 for WASHINGTON DIAMOND;

2.      That the Court find that the conduct of ADI described herein constitutes tortious interference with a business and contractual relationship in violation of Maryland and/or Virginia common law, and entering appropriate injunctive and monetary relief to WDC;

3.      That the Court dismiss with prejudice all claims by ADI against WDC and that ADI take nothing thereby;

4.      That the Court award WDC its attorneys' fees and costs in connection with this action, pursuant to 15 USC § 1117;

5.      That the Court award WDC its damages sustained in consequence of ADI's false and fraudulent representation in its trademark application, pursuant to 15 U.S.C. § 1120; and

6.      That WDC be granted such other and further relief as the Court may deem necessary, just, and proper.

Respectfully submitted,

**ECKERT SEAMANS CHERIN &
MELLOTT, LLC**

By:      */s/ Edward J. Longosz, II*
Edward J. Longosz, II (# 07509)
1717 Pennsylvania Avenue, NW, Suite 1200
Washington, DC  20006
Tel:  (202) 659-6619
Fax:  (202) 659-6699
elongosz@eckertseamans.com
*Counsel for Defendant Washington Diamonds
Corporation*

Roberta Jacobs-Meadway, Esquire
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 29102
(215) 851-8400
rjacobsmeadway@eckertseamans.com
*Pro Hac Vice Pending*


Jeffrey P. Lewis, Esquire
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 29102
(215) 851-8400
jlewis@eckertseamans.com
*Pro Hac Vice Pending*


Bridget Heffernan Labutta, Esquire
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 29102
(215) 851-8400
blabutta@eckertseamans.com
*Pro Hac Vice Pending*

*Counsel for Defendant Washington Diamonds
   Corporation*

## <u>CERTIFICATE OF SERVICE</u>

       I HEREBY CERTIFY that a copy of the foregoing **Answer, Affirmative Defenses, and Counterclaims** was filed with the Clerk of Court and served via the CM/ECF system, this 13th day of August, 2014, to:

> Joseph P. Bowser, Esquire
> Leah C. Montesano, Esquire
> ARENT FOX LLP
> 1717 K Street, NW
> Washington, DC 20036-5342
> Counsel for Plaintiff

              */s/ Edward J. Longosz, II*
               Edward J. Longosz, II